# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF VIRGINIA
## BIG STONE GAP DIVISION

| | | |
|---|---|---|
| **MYRA M. PALMER,** | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | Civil Action No. 2:04cv00088 |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| | ) | |
| **JO ANNE B. BARNHART,** | ) | |
| **Commissioner of Social Security,** | ) | By:   PAMELA MEADE SARGENT |
| Defendant | ) | United States Magistrate Judge |

In this social security case, I affirm the final decision of the Commissioner denying benefits.

## I. Background and Standard of Review

Plaintiff, Myra M. Palmer, filed this action challenging the final decision of the Commissioner of Social Security, ("Commissioner"), denying plaintiff's claim for supplemental security income, ("SSI"), under the Social Security Act, as amended, ("Act"), 42 U.S.C.A. § 1381 *et seq.* (West 2003). Jurisdiction of this court is pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3). This case is before the undersigned magistrate judge upon transfer pursuant to the consent of the parties under 28 U.S.C. § 636(c)(1).

The court's review in this case is limited to determining if the factual findings of the Commissioner are supported by substantial evidence and were reached through

Case 2:04-cv-00088-PMS   Document 15   Filed 07/22/05   Page 1 of 24   Pageid#: 88

application of the correct legal standards. *See Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). "'If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."'" *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990) (quoting *Laws*, 368 F.2d at 642).

The record shows that Palmer protectively filed her application for SSI on or about August 15, 2002, alleging disability as of August 1, 2002, based on Behcet's syndrome,[1] female problems, joint problems, severe headaches, back pain, radial palsy, anxiety and depression. (Record, ("R."), at 44-49, 58.) Palmer's claim was denied both initially and on reconsideration. (R. at 33-37, 38, 40-42.) Palmer then requested a hearing before an administrative law judge, ("ALJ"). (R. at 43.) The ALJ held a hearing on December 11, 2003, at which Palmer was represented by counsel. (R. at 308-25.)

By decision dated January 21, 2004, the ALJ denied Palmer's claim. (R. at 17-25.) The ALJ found that Palmer had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 24.) The ALJ found that the medical evidence

---

[1]Behcet's syndrome is "a chronic inflammatory disorder involving the small blood vessels, which is of unknown etiology, and is characterized by recurrent aphthous ulceration of the oral and pharyngeal mucous membranes and the genitalia, skin lesions, severe uveitis, retinal vasculitis [] and optic atrophy. It frequently also involves the joints, gastrointestinal system [] and central nervous system." DORLAND'S ILLUSTRATED MEDICAL DICTIONARY, ("Dorland's"), 1631 (27th ed. 1988).

-2-

established that Palmer had severe impairments, namely back pain with minimal degenerative changes and Behcet's syndrome, but he found that Palmer did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22, 24.) The ALJ further found that Palmer's allegations regarding her limitations were not totally credible. (R. at 24.) The ALJ found that Palmer had the residual functional capacity to perform medium work.[2] (R. at 25.) Thus, the ALJ found that Palmer was able to perform her past relevant work as a receptionist. (R. at 23, 25.) The ALJ found that Palmer was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 25.) *See* 20 C.F.R. § 416.920(f) (2004).

After the ALJ issued his opinion, Palmer pursued her administrative appeals, (R. at 11), but the Appeals Council denied her request for review. (R. at 5-8.) Palmer then filed this action seeking review of the ALJ's unfavorable decision, which now stands as the Commissioner's final decision. *See* 20 C.F.R. § 416.1481 (2004). The case is before this court on Palmer's motion for summary judgment filed February 25, 2005, and the Commissioner's motion for summary judgment filed April 21, 2005.

## II. Facts

Palmer was born in 1974, (R. at 44, 311), which classifies her as a "younger person" under 20 C.F.R. § 416.963(c). She has a high school education and approximately two years of college level instruction. (R. at 64, 311.) Palmer has past

---

[2]Medium work involves lifting items weighing up to 50 pounds at a time with frequent lifting or carrying of items weighing up to 25 pounds. If someone can perform medium work, she also can perform light and sedentary work. *See* 20 C.F.R. § 416.967(c) (2004).

relevant work experience as a retail salesperson and a receptionist. (R. at 59, 312.)

Palmer testified at her hearing that she was unable to work due to Behcet's syndrome, which resulted in mouth and genital ulcers. (R. at 312-13.) She stated that she had difficulty concentrating due to pain, as well as speaking with people due to the mouth ulcers. (R. at 312, 322.) Palmer testified that Behcet's syndrome also affected the arthritis in her hands. (R. at 313.) She stated that there is no cure for Behcet's syndrome and that she considered herself lucky if she went one day per month without a mouth ulcer. (R. at 313.) Palmer stated that she experienced pain in her genital area approximately one week to 10 days per month. (R. at 320.) She stated that she was being treated with Lidocaine and antibiotics. (R. at 313.) She testified that when she had genital ulcers, it was very painful to urinate, requiring her to use Lidocaine. (R. at 320.) She stated that she also had experienced severe ulcers in her ears, as well as in her eyes, causing them to become red and swollen. (R. at 321.) Palmer stated that her mother and three sisters also suffered from the syndrome. (R. at 314.)

Palmer testified that she could drive a car, but not for long distances without stopping due to low back and hip pain, which radiated into her feet and legs. (R. at 315-16.) Palmer further stated that she experienced numbness in her hands due to what Dr. Maine seemed to think was arthritis. (R. at 316.) She testified that she had arthritis in both upper and lower extremities, as well as her back. (R. at 316.) Palmer testified that she could make a grip. (R. at 317.) She stated that she considered the pain in her feet to be the worst. (R. at 317.) Palmer testified that the genital ulcers made it difficult to sit on hard surfaces for very long and they required her to lie down.

-4-

(R. at 322.)  She stated that they also made walking very difficult.  (R. at 322.)

Palmer testified that she could walk for approximately 10 to 15 minutes without interruption.  (R. at 317.)  She stated that she prepared meals for her family and could perform housework for short periods of time.  (R. at 317.)  Palmer testified that her three-year-old daughter was home with her during the day.  (R. at 318.)  She stated that she watched some television and attended church services weekly.  (R. at 318.)  Palmer testified that because it hurt to chew and swallow, she had to take Lidocaine both before and during meals to keep her mouth numb.  (R. at 320.)

In rendering his decision, the ALJ reviewed records from Dr. Charles P. Maine, M.D.; Dr. A.R. Joshi, M.D.; Dr. Charlotte Keene, M.D.; Holston Valley Medical Center; Dr. W.J. Schermer, M.D.; Norton Community Hospital; Dr. Earl Wilson, M.D.; Wake Forest University School of Medicine; Dr. Kevin Blackwell, D.O.; Dr. Donald R. Williams, M.D., a state agency physician; Dr. Randall Hays, M.D., a state agency physician; and Robert S. Spangler, Ed.D., a licensed psychological examiner. Palmer's attorney submitted additional medical records from Dr. Maine to the Appeals Council.[3]

On May 8, 1996, Dr. Charles P. Maine, M.D., noted that Palmer had a history of a blistering disease of the mucous membranes of uncertain etiology, possibly Behcet's syndrome.  (R. at 109.)  He noted a few scattered ulcerations on the soft palette.  (R. at 109.)  Palmer was prescribed Biaxin and viscous Xylocaine.  (R. at

---

[3]Since the Appeals Council considered this evidence in reaching its decision not to grant review, (R. at 5-8), this court also should consider this evidence in determining whether substantial evidence supports the ALJ's findings.  *See Wilkins v. Sec'y of Dep't of Health & Human Servs.*, 953 F.2d 93, 96 (4th Cir. 1991).

-5-

109.)  On August 23, 1996, Palmer complained of fatigue, which Dr. Maine attributed to her raising three small children.  (R. at 108.)

On July 17, 1996, Palmer saw Dr. W.J. Schermer, M.D., a dermatologist, who diagnosed her with aphthous stomatitis.[4]  (R. at 203.)  Dr. Schermer prescribed Carafate and viscous Lidocaine.  (R. at 203.)  On December 3, 1997, Palmer complained to Dr. Maine of a sore throat, but nothing else.  (R. at 106.)  She stated that she felt well otherwise.  (R. at 106.)  Marked erythema of the throat was noted, and Palmer had positive anterior cervical nodes.  (R. at 106.)  She was continued on medications.  (R. at 106.)  On March 2, 1998, Palmer continued to complain of a sore throat with blisters.  (R. at 105.)  Dr. Maine noted that Palmer usually responded to Erythromycin and viscous Xylocaine.  (R. at 105.)  She had no cough or shortness of breath.  (R. at 105.)  She was again continued on medications.  (R. at 105.)  On May 2, 1998, Palmer complained of blisters on her throat for the previous two days.  (R. at 106.)  On July 20, 1998, she complained of red bumps on the back of her neck and swollen lymph nodes on the right posterior neck.  (R. at 104.)  She denied a sore throat.  (R. at 104.)  Dr. Maine noted that Palmer was in no acute distress.  (R. at 104.)  He diagnosed her with pustular skin lesions with cervical lymph nodes.  (R. at 104.)  Dr. Maine opined that this was a type of very mild folliculitis and prescribed Cipro for seven days.  (R. at 104.)

On February 23, 1999, Palmer complained of lower abdominal pain with some dysuria for the previous two days.  (R. at 102.)  She was in no acute distress, but had

_____

[4]Aphthous stomatitis is a recurrent inflammation of the oral mucosa due to local or systemic factors, which may involve the buccal and labial mucosa, palate, tongue, floor of the mouth and the gingivae.  *See* Dorland's at 1585.

-6-

mild periumbilical and right lower quadrant tenderness. (R. at 102.) A urinalysis showed no evidence of infection. (R. at 102.) Dr. Maine diagnosed Palmer with possible early appendicitis for which she was admitted to the hospital. (R. at 102.) The same day, Palmer presented to the emergency department at Norton Community Hospital with complaints of abdominal pain with fever, chills and anorexia. (R. at 204, 210.) After undergoing ultrasounds of the upper abdomen and pelvis, Palmer was diagnosed with appendicitis. (R. at 208, 210.) She underwent an appendectomy and was discharged the following day. (R. at 204-05.) On June 12, 2000, Palmer again complained of a sore throat. (R. at 100.) She was diagnosed with an upper respiratory infection and possible strep throat. (R. at 100.) On October 30, 2000, she complained of dysuria, urgency and frequency for the previous day. (R. at 99.) Palmer noted some low back pain approximately two days prior to the onset of her other symptoms. (R. at 99.) Dr. Maine noted that Palmer was in no acute distress and exhibited no costovertebral angle, ("CVA"), tenderness. (R. at 99.) He diagnosed her with acute cystitis and prescribed Septra DS and Pyridium. (R. at 99.)

On November 7, 2000, Palmer complained of a headache and a rash. (R. at 98.) Dr. Maine noted moderate erythema of the throat and a very mild headache, which was treated with Advil. (R. at 98.) An eye examination was unremarkable. (R. at 98.) On July 5, 2001, Palmer complained of left ear pain for the previous two days. (R. at 97.) She was in no acute distress, but had obvious left otitis media and otitis externa. (R. at 97.) He further noted a very erythematous external canal with one blister and a very red tympanic membrane with retraction. (R. at 97.) Dr. Maine prescribed Cortisporin and Cefzil. (R. at 97.) By July 10, 2001, Palmer's only complaint was fatigue, and she insisted that she had thyroid problems. (R. at 96.) Dr.

-7-

Maine informed her that probably was not the case, but he agreed to perform thyroid testing. (R. at 96.) He again attributed Palmer's fatigue to raising three small children and suffering Behcet's syndrome. (R. at 96.)

On October 25, 2001, Palmer saw Dr. A.R. Joshi, M.D. (R. at 95.) She reported a sore throat with blisters and swallowing difficulties for the previous three to four days. (R. at 95.) She further complained of a severe pounding headache. (R. at 95.) Dr. Joshi diagnosed Palmer with an acute upper respiratory infection and prescribed Biaxin LA and Allegra D. (R. at 95.)

On November 27, 2001, Dr. Charlotte S. Keene, M.D., with Appalachian OB/GYN, diagnosed Palmer with probable Behcet's syndrome with ulcers occurring monthly. (R. at 114.) On January 16, 2002, Dr. Keene noted a genital ulcer. (R. at 112.) She was prescribed Clobetasol cream. (R. at 112.)

On December 18, 2001, Palmer again saw Dr. Schermer, who prescribed viscous Lidocaine. (R. at 196.) Palmer saw Dr. Maine on April 26, 2002, and asked him to prescribe Neurontin for her blistering condition based on other family members' reports that it had helped them. (R. at 94.) Dr. Maine advised Palmer that Neurontin was not indicated for such a use and that he doubted that it would help. (R. at 94.) He prescribed the medication anyway. (R. at 94.) On July 1, 2002, Palmer complained of numbness of the left arm for the previous four days. (R. at 93.) She had no other complaints. (R. at 93.) Dr. Maine noted that Palmer was in no acute distress and that an arm examination revealed normal motion, muscle function, reflexes and sensation. (R. at 93.) She was diagnosed with numbness in the left arm

-8-

of an unclear etiology.  (R. at 93.)  Nerve conduction tests were ordered.  (R. at 93.)
Dr. Maine also increased her dosage of Neurontin, noting that it appeared to be
helping her condition.  (R. at 93.)

On July 11, 2002, Palmer saw Dr. Earl K. Wilson, M.D., a neurologist, for an
evaluation of her left arm numbness and weakness.  (R. at 227-30.)  Palmer reported
that Neurontin helped to decrease the amount of mouth ulcers.  (R. at 227.)  She stated
that two weeks previously, she awoke with left arm numbness and weakness and an
inability to hold her wrist or fingers up.  (R. at 227.)  She reported that these
symptoms had improved, but she still could not use her hand and continued to feel
numb on the dorsal aspect of the first and second digit and the radial portion of the
dorsum of the hand.  (R. at 227.)  She described her hand as "clumsy."  (R. at 227.)
Dr. Wilson noted that Palmer was alert with normal mentation, speech and cranial
nerves.  (R. at 227.)  She had good peripheral pulses.  (R. at 227.)  A motor
examination revealed weakness of the extensors of the digits, a wrist with a normal
triceps and normal flexors of the digits and forearm and normal biceps function.  (R.
at 227.)  She ambulated well.  (R. at 227.)  Dr. Wilson performed a nerve conduction
and electromyogram, ("EMG"), study, which revealed radial palsy and radial
neuropathy of a mild degree.  (R. at 227-30.)  He noted that her condition should
merely be watched, as it seemed to be getting better pretty rapidly.  (R. at 227.)  The
EMG did not necessarily show dennervation changes.  (R. at 227.)

On November 30, 2002, Dr. Schermer again prescribed viscous Lidocaine and
Dexamethasone.  (R. at 195.)  At that time, it was explained to Palmer that Dr.
Schermer was not in her insurance network.  (R. at 195.)  It appears from the record

-9-

that Palmer did not see Dr. Schermer after this time.

On December 11, 2002, Palmer was seen by Dr. Tasha O'Conner, M.D., and Dr. Joseph L. Jorizzo, M.D., at Wake Forest University School of Medicine Department of Dermatology, ("Wake Forest"), for an evaluation of possible Behcet's syndrome. (R. at 232.) In addition to reports of blisters, Palmer complained of occasional joint pains, especially in the knees. (R. at 232.) She also complained of frequent headaches and numbness in the hands. (R. at 232.) Palmer reported discontinuing Neurontin because it made her too drowsy. (R. at 232.) Dr. O'Conner and Dr. Jorizzo noted that Palmer was alert and oriented with a pleasant affect. (R. at 232.) They further noted three large ulcers in the oral mucosa and one on the tongue. (R. at 232.) She denied genital ulcers at that time. (R. at 232.) Drs. O'Conner and Jorizzo opined that Palmer likely had a mild form of Behcet's syndrome since she did not have any eye involvement. (R. at 232.) She was prescribed Colchicine and was referred to an opthamologist. (R. at 232.)

On February 26, 2003, Palmer complained of mid back pain for the previous three days after her automobile slipped into a ditch a couple of days before that. (R. at 92.) Dr. Maine noted some mouth ulcers at that time. (R. at 92.) A physical examination revealed pain around the T8 area down to the L1 level of the spine and some very mild associated muscle spasm. (R. at 92.) Palmer complained of pain and stiffness with flexion and movement. (R. at 92.) Dr. Maine opined that an x-ray was not necessary. (R. at 92.) He diagnosed her with musculoskeletal back pain and strain and prescribed Skelaxin and Darvocet for pain if necessary. (R. at 92.)

-10-

Palmer presented to the emergency department at Norton Community Hospital on March 12, 2003, with complaints of vomiting, shortness of breath and sharp, stabbing pain in the chest, back and lungs. (R. at 240.) A chest x-ray revealed mildly increased markings in the retrocardiac area such that early infiltrate could not be excluded. (R. at 246.) Follow-up was recommended. (R. at 246.) She was diagnosed with acute stomatitis. (R. at 239.) The following day, an upper abdominal sonogram revealed no definite acute abnormality. (R. at 247.)

Palmer saw Dr. Kevin Blackwell, D.O., on April 4, 2003, at the request of the Virginia Department of Rehabilitative Services. (R. at 259-64.) Palmer reported experiencing daily mouth lesions and ulcers with occasional ulcers elsewhere on her body. (R. at 259.) She also complained of arthritis in her joints and regular back pain, which she rated as a six on a 10-point scale, with 10 being the worst pain. (R. at 259.) Palmer denied any radicular pain and exhibited no cauda equina symptoms. (R. at 259.) Dr. Blackwell noted that Palmer was in no acute distress, was alert, cooperative and fully oriented with a good mental status, exhibited a broad fund of knowledge and good thought content. (R. at 260.) He noted some scattered ulcerative lesions along the inner cheek bilaterally. (R. at 261.) Palmer's gait was symmetrical and balanced, but she exhibited tenderness throughout the lumbar musculature. (R. at 261.) No spasm or deformity was noted. (R. at 261.) An examination of the upper and lower joints was unremarkable. (R. at 261.) Palmer's upper and lower extremities were of normal size, shape, asymmetry and strength. (R. at 261.) Fine motor movement of the hands was good and her dexterity and grip strength were intact. (R. at 261.) Straight leg raising was negative, and Palmer's deep tendon reflexes were intact. (R. at 261.) Palmer had a full range of motion of all joints. (R. at 263-64.) Dr. Blackwell

-11-

diagnosed Palmer with back pain and Behcet's syndrome. (R. at 261.) He concluded that she had no musculoskeletal impairments and was capable of standing for eight hours in an eight-hour day and sitting for eight hours in an eight-hour day or any combination thereof. (R. at 261.) He further found no limitation on fine motor movements of the hands. (R. at 262.) An x-ray of the lumbar spine showed only minimal degenerative changes. (R. at 265.)

On April 9, 2003, Dr. Donald R. Williams, M.D., a state agency physician, completed a physical assessment, finding that Palmer could perform medium work. (R. at 266-73.) He found no postural, manipulative, visual, communicative or environmental limitations. (R. at 269-71.) Dr. Williams concluded that Palmer's subjective complaints were only partially credible given her activities of daily living, including helping her children get ready for school, preparing meals, helping with homework, driving, performing household chores, grocery shopping, visiting others and taking care of her own personal care. (R. at 272.) This assessment was affirmed by Dr. Randall Hays, M.D., another state agency physician on June 24, 2003. (R. at 273.)

On April 16, 2003, Palmer returned to Wake Forest for a follow-up visit. (R. at 231.) She reported that she did not tolerate the Colchicine. (R. at 231.) Palmer further reported that an opthamologist had found no ocular abnormalities.[5] (R. at 231.) A physical examination revealed several ulcers on her tongue, buccal mucosa and gingiva. (R. at 231.) She was diagnosed with complex aphthosis with a strong family history of Behcet's syndrome. (R. at 231.) Palmer was prescribed Trental, as

---

[5]There are no treatment notes from any opthamologist contained in the record on appeal.

well as Protopic and Temovate ointments.  (R. at 231.)

On March 12, 2003, Palmer complained of an earache.  (R. at 91.)  Dr. Maine
noted that her left ear was markedly red with a small blister in the left ear canal.  (R.
at 91.)  He further noted that the ear was "pink and bulging and obviously infected."
(R. at 91.)  She was prescribed Levaquin.  (R. at 91.)  Later the same day, Palmer
informed Dr. Maine of chest pain and vomiting.  (R. at 90.)  He advised her to proceed
to the emergency department.  (R. at 90.)  On April 8, 2003, Palmer complained of
bilateral foot pain for the previous four or five months.  (R. at 89.)  Dr. Maine noted
no trauma to Palmer's feet, and a physical examination revealed intact pedal pulses,
unremarkable feet, knees and calves, no edema and no swelling.  (R. at 89.)  Dr.
Maine advised taking bilateral x-rays when possible.  (R. at 89.) He prescribed Vioxx.
(R. at 89.)  He noted that Palmer's ears looked much better, but that the left tympanic
membrane had a very small blister, although improved from before.  (R. at 89.)

On June 13, 2003, Dr. Maine noted that Palmer had been stable since her last
visit, noting no further problem with her ears.  (R. at 88.)  Palmer stated that she felt
well, except for being very weak.  (R. at 88.)  She further stated that her disability
claim had been turned down.  (R. at 88.)  Dr. Maine noted a few ulcers in Palmer's
mouth.  (R. at 88.)  He noted that Vioxx seemed to help her pain.  (R. at 88.)  Dr.
Maine opined that Palmer was not capable of gainful employment based on her
Behcet's syndrome, chronic mouth ulcers and back pain.  (R. at 88.)  He noted that a
foot x-ray was unrevealing.  (R. at 88.)  Palmer again saw Dr. Maine on September
15, 2003.  (R. at 281.)  He noted that she was doing well.  (R. at 281.)  He diagnosed
her with Behcet's syndrome and degenerative joint disease and advised her to

-13-

continue taking Vioxx.  (R. at 281.)

Palmer saw Robert S. Spangler, Ed.D., a licensed psychologist, on September 29, 2003.  (R. at 292-97.)  Palmer's husband drove her to the evaluation, but she noted that they had to stop twice to relieve pain in her left eye and feet.  (R. at 292.) Spangler noted that she drove daily in her area.  (R. at 292.)  Palmer demonstrated age-appropriate gross and fine motor skills.  (R. at 292.)  Spangler further noted that her general activity level was age- and task-appropriate.  (R. at 292.)  During the evaluation, Palmer appeared socially confident, but anxious.  (R. at 292.)  Spangler reported that she generally understood the instructions, demonstrated good concentration and was task committed.  (R. at 292.)  He noted that she stopped frequently to rub her left eye.  (R. at 292.)  Palmer reported that she was inactive for a minimum of six to seven days per month due to her Behcet's syndrome.  (R. at 293.) She further reported classic anxiety symptoms, which began in her early 20s and which had worsened over the previous two years.  (R. at 293.)  Spangler noted that Palmer had not undergone any mental health treatment to date.  (R. at 293.)  Palmer also reported daily headaches.  (R. at 293.)

Spangler stated that Palmer was alert and fully oriented.  (R. at 293.)  She was forthcoming and fully compliant.  (R. at 293.)  Palmer manifested no loose associations or illogical language, and she appeared to be of average intelligence.  (R. at 293.)  Delusional thinking was not evident.  (R. at 293.)  Palmer reported getting up around 6 a.m., fixing breakfast, driving her children to school and performing all normal household chores on "good days," including grocery shopping.  (R. at 293.) She stated that on her six or seven "bad days," she did not do any chores.  (R. at 293.)

-14-

Palmer stated that her husband attended to the yard work. (R. at 293-94.) She reported watching television daily and attending church twice per week. (R. at 294.) Palmer stated that she napped daily when she could. (R. at 294.) Spangler rated Palmer's social skills as adequate, and he noted that she had the judgment necessary to handle her own financial affairs. (R. at 294.)

Spangler administered the Wechsler Adult Intelligence Scale-Third Edition, ("WAIS-III"), test, on which Palmer obtained a verbal IQ score of 94, a performance IQ score of 87 and a full-scale IQ score of 91, placing Palmer in the average range of intelligence. (R. at 294, 296.) Spangler deemed these results reliable and valid. (R. at 294.) Spangler also administered the Wide Range Achievement Test-Third Edition, ("WRAT-3"), the results of which were consistent with the WAIS-III. (R. at 294.) This test revealed that Palmer had a post-high school reading level and an eighth-grade arithmetic level. (R. at 294.) Spangler diagnosed an anxiety disorder, not otherwise specified, mild, and low average intelligence. (R. at 295.)

Spangler also completed a Mental Assessment Of Ability To Do Work-Related Activities. (R. at 298-99.) He concluded that Palmer had a good ability in the majority of areas of adjustment. (R. at 298-99.) Spangler concluded that Palmer had unlimited abilities to understand, remember and carry out both simple and detailed job instructions. (R. at 299.) However, he found that Palmer had between a good and fair ability to deal with the public and to deal with work stresses and a fair ability to demonstrate reliability. (R. at 298-99.) Spangler opined that Palmer would miss work frequently due to her Behcet's syndrome. (R. at 299.)

-15-

Dr. Maine wrote a letter to "To Whom It May Concern" on December 1, 2003, stating that Palmer could not work due to Behcet's syndrome. (R. at 300.) He further noted that she experienced occasional low back pain. (R. at 300.) Dr. Maine stated that the ulcers interfered with Palmer's ability to eat and to swallow, noting that, on occasion, it was very hard for her to work. (R. at 300.) Thus, he concluded that Palmer was incapable of performing gainful employment. (R. at 300.)

On January 29, 2004, Palmer saw Dr. Maine with complaints of dysuria, frequency and suprapubic pain for the previous 24 hours. (R. at 307.) Dr. Maine noted that Palmer was passing blood. (R. at 307.) She otherwise felt well. (R. at 307.) Palmer appeared to be in no acute distress. (R. at 307.) A physical examination revealed no CVA tenderness, but her abdomen showed some very minimal suprapubic tenderness. (R. at 307.) She was diagnosed with a urinary tract infection and was prescribed Macrobid. (R. at 307.)

## III. Analysis

The Commissioner uses a five-step process in evaluating SSI claims. *See* 20 C.F.R. § 416.920 (2004); *see also Heckler v. Campbell*, 461 U.S. 458, 460-62 (1983); *Hall v. Harris*, 658 F.2d 260, 264-65 (4th Cir. 1981). This process requires the Commissioner to consider, in order, whether a claimant 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to her past relevant work; and 5) if not, whether she can perform other work. *See* 20 C.F.R. § 416.920 (2004). If the Commissioner finds conclusively that a claimant is or is not disabled at any point in this process, review

-16-

does not proceed to the next step. *See* 20 C.F.R. § 416.920(a) (2004).

Under this analysis, a claimant has the initial burden of showing that she is unable to return to her past relevant work because of her impairments. Once the claimant establishes a prima facie case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must then establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience and impairments, to perform alternative jobs that exist in the national economy. *See* 42 U.S.C.A. §§ 423(d)(2)(A), 1382c(a)(3)(A)-(B) (West 2003); *McLain v. Schweiker*, 715 F.2d 866, 868-69 (4th Cir. 1983); *Hall*, 658 F.2d at 264-65; *Wilson v. Califano*, 617 F.2d 1050, 1053 (4th Cir. 1980).

By decision dated January 21, 2004, the ALJ denied Palmer's claim. (R. at 17-25.) The ALJ found that Palmer had not engaged in substantial gainful activity since the alleged onset of disability. (R. at 24.) The ALJ found that the medical evidence established that Palmer had severe impairments, namely back pain with minimal degenerative changes and Behcet's syndrome, but he found that Palmer did not have an impairment or combination of impairments listed at or medically equal to one listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (R. at 22, 24.) The ALJ further found that Palmer's allegations regarding her limitations were not totally credible. (R. at 24.) The ALJ found that Palmer had the residual functional capacity to perform medium work. (R. at 25.) Thus, the ALJ found that Palmer was able to perform her past relevant work as a receptionist. (R. at 23, 25.) The ALJ found that Palmer was not under a disability as defined in the Act, and that she was not entitled to benefits. (R. at 25.) *See* 20 C.F.R. § 416.920(f) (2004).

-17-

In her brief, Palmer argues that the ALJ erred by failing to grant controlling weight to the opinions of her treating physician, Dr. Maine. (Plaintiff's Motion For Summary Judgment And Memorandum Of Law, ("Plaintiff's Brief"), at 6-10.) Palmer also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment. (Plaintiff's Brief at 10-12.)

As stated above, the court's function in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. This court must not weigh the evidence, as this court lacks authority to substitute its judgment for that of the Commissioner, provided her decision is supported by substantial evidence. *See Hays*, 907 F.2d at 1456. In determining whether substantial evidence supports the Commissioner's decision, the court also must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997).

Palmer argues that the ALJ erred by failing to grant controlling weight to the opinions of her treating physician, Dr. Maine. (Plaintiff's Brief at 6-10.) I disagree. The ALJ must consider objective medical facts and the opinions and diagnoses of both treating and examining medical professionals, which constitute a major part of the proof of disability cases. *See McLain*, 715 F.2d at 869. The ALJ must generally give more weight to the opinion of a treating physician because that physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. 20 C.F.R. § 404.1527(d)(2) (2004). However, "circuit precedent does not require that a

-18-

treating physician's testimony 'be given controlling weight.'" *Craig v. Chater*, 76 F.3d 585, 590 (4ᵗʰ Cir. 1996) (quoting *Hunter v. Sullivan*, 993 F.2d 31, 35 (4ᵗʰ Cir. 1992)). In fact, "if a physician's opinion is not supported by the clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Here, as the ALJ noted in his decision, Dr. Maine's findings of disability are inconsistent with his own treatment notes, as well as the findings of the other medical sources contained in the record. For instance, although Dr. Maine opined on June 13, 2003, that Palmer was not capable of gainful employment based on Behcet's syndrome, chronic mouth ulcers and back pain, this was only after Palmer informed him that her disability claim had been denied. (R. at 88.) Again, in a letter dated December 1, 2003, Dr. Maine opined that Palmer was incapable of performing gainful employment due to Behcet's syndrome and occasional low back pain. (R. at 300.) I first note that the determination of disability is reserved solely to the Commissioner. *See* 20 C.F.R. § 416.927(e) (2004). Thus, Dr. Maine's opinion is not entitled to controlling weight on that basis. I further note that such opinions are inconsistent with Dr. Maine's own treatment notes. For instance, none of his notes revealed the imposition of any work-related limitations. Likewise, Palmer did not relay any such limitations to Dr. Maine. In fact, on several occasions that Palmer complained of ulcers relating to her Behcet's syndrome, she stated that she otherwise felt well. (R. at 88, 106.) Moreover, despite Dr. Maine's statement in his December 2003 letter, Palmer reported that Lidocaine effectively treated her pain due to ulcers while eating. Only in her testimony at her hearing on December 11, 2003, after Dr. Maine's letter, did she state that she experienced difficulty chewing and swallowing. (R. at 320.)

-19-

I also note that Dr. Maine's treatment notes do not reveal disabling back pain. The first mention of back pain was in February 2003, after Palmer's automobile slipped into a ditch. (R. at 92.) Dr. Maine did not believe an x-ray was necessary. (R. at 92.) He diagnosed her with musculoskeletal back pain and strain and prescribed Skelaxin and Darvocet for pain if necessary. (R. at 92.) On September 15, 2003, not long after Palmer informed him that her disability claim had been denied, Dr. Maine diagnosed degenerative joint disease. (R. at 281.) However, he performed no objective testing before rendering such a diagnosis. I further note that Dr. Maine, as well as other medical sources, consistently noted that Palmer was in no acute distress. (R. at 93, 97, 102, 104, 260, 307.)

I next find that Dr. Maine's opinions are inconsistent with those of the other medical sources contained in the record. For instance, in December 2002, Dr. O'Conner and Dr. Jorizzo opined that Palmer had only a mild form of Behcet's syndrome. (R. at 232.) In April 2003, Dr. Blackwell noted some scattered ulcerative lesions along the inner cheek bilaterally and some tenderness throughout the lumbar musculature. (R. at 261.) However, no spasm or deformity was noted. (R. at 261.) Straight leg raising was negative, and Palmer exhibited a full range of motion of all joints. (R. at 261, 263-64.) Although Dr. Blackwell diagnosed Palmer with Behcet's syndrome, he concluded that she had no musculoskeletal impairments and that she was capable of standing and sitting for eight hours each, or in combination, in an eight-hour day. (R. at 261.) An x-ray of the lumbar spine showed only minimal degenerative changes. (R. at 265.)

Likewise, Dr. Maine's opinion is inconsistent with Palmer's activities of daily

-20-

living. For instance, the record reveals that she helped her children get ready for school, prepared family meals, performed housework for short periods of time, helped her children with homework, drove, went grocery shopping, visited others and attended to her own personal care. (R. at 272, 317.) Palmer also reported that she cared for her three-year old daughter during the day, watched television and attended church services twice weekly. (R. at 318.)

For all of these reasons, I find that substantial evidence supports the ALJ's decision to reject the opinions of Dr. Maine.

Palmer also argues that the ALJ erred by failing to find that she suffered from a severe mental impairment, noting that he improperly substituted his opinion for that of psychologist Spangler. (Plaintiff's Brief at 10-12.) I find this argument to be without merit. The regulations define a "nonsevere" impairment as an impairment or combination of impairments that does not significantly limit a claimant's ability to do basic work activities. *See* 20 C.F.R. § 416.921(a) (2004). Basic work activities include walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, handling, seeing, hearing, speaking, understanding, carrying out and remembering job instructions, use of judgment, responding appropriately to supervision, co-workers and usual work situations and dealing with changes in a routine work setting. *See* 20 C.F.R. § 416.921(b) (2004). The Fourth Circuit held in *Evans v. Heckler*, that "'"[a]n impairment can be considered as 'not severe' only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience."'" 734 F.2d 1012, 1014 (4th Cir. 1984) (quoting *Brady v. Heckler*, 724

-21-

F.2d 914, 920 (11th Cir. 1984) (citations omitted).

It is clear from the record that substantial evidence supports the ALJ's failure to find that Palmer suffered from a severe mental impairment. Moreover, contrary to Palmer's argument that the ALJ substituted his opinion for that of psychologist Spangler, I find that the ALJ's finding is, in fact, supported by Spangler's assessment. For instance, in his September 29, 2003, evaluation, Spangler found that Palmer generally understood the instructions, demonstrated good concentration and was task committed. (R. at 292.) He further noted that Palmer had not undergone any mental health treatment at that time. (R. at 292.) Spangler rated Palmer's social skills as adequate, and he noted that she had the judgment necessary to handle her own financial affairs. (R. at 294.) Palmer's results on the WAIS-III test placed her in the average range of intelligence, and the WRAT-3 results revealed that Palmer had a post-high school reading level and an eighth-grade math level. (R. at 294.) Spangler diagnosed Palmer with an anxiety disorder, not otherwise specified, mild, and low average intelligence. (R. at 295.) Spangler also completed a mental assessment, concluding that Palmer had a good ability in the majority of areas of adjustment. (R. at 298-99.)

Thus, it is clear from psychologist Spangler's evaluation and assessment, that Palmer does not suffer from a severe mental impairment. The findings can be described as minimal at best. That being the case, I find that the ALJ did not improperly substitute his opinion for that of psychologist Spangler. I note that the remainder of the record does not support Palmer's contention of a mental impairment. For instance, Palmer has sought no mental health treatment at any time in the past, she

did not complain of any mental impairments to any of her treating medical sources and she had never been placed on any medication for the treatment of any mental impairment.

For all of these reasons, I find that substantial evidence supports the ALJ's finding that Palmer did not suffer from a severe mental impairment and that he did not improperly substitute his judgment for that of a trained mental health professional in so finding.

## IV. Conclusion

For the foregoing reasons, the Palmer's motion for summary judgment will be denied, the Commissioner's motion for summary judgment will be granted and the Commissioner's decision denying benefits will be affirmed.

An appropriate order will be entered.

DATED:      This 22nd day of July 2005.


/s/  *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE

-23-

-24-